## Case No. 114.

### AIREY v. The ANN C. PRATT.

[1 Curt. 395.][1]

Circuit Court, D. Maine.   Sept. Term, 1853.[2]

SEAMEN—FORFEITURE OF WAGES—MISCONDUCT OF MATE TEMPORARILY IN COMMAND.

In a suit in rem by a mate, to recover his wages under the shipping articles, the court

[1][Reported by Hon. B. R. Curtis, Circuit Justice.]

[2][Affirming Airey v. The Ann C. Pratt, Case No. 113a.]

cannot investigate an allegation of misconduct as master, while in the temporary command of the vessel as master, in a voyage, during which the master was not on board, with a view to inflicting a forfeiture of wages as mate.

[Appeal from the district court of the United States for the district of Maine.]

This was a libel in the admiralty [by Richard R. Airey against the brig Ann C. Pratt, (Leonard B. Pratt, master and claimant.)] The case is stated in the opinion of the court. [Decree for libelant. Claimant appeals. Modified and affirmed.]

Rowe, for libellant.
W. P. Fessenden, contra.

Before CURTIS, Circuit Justice, and WARE, District Judge.

CURTIS, Circuit Justice. The libellant claims his wages, as mate, for the voyages of the brig Ann C. Pratt, which are described in the opinion of the court in the case of Carrington et al. against that vessel, (1 Curt. 340, [The Ann C. Pratt, Case No. 409,]) decided at the last term of this court. The claimant alleges a forfeiture of the wages by three different instances of misconduct.

The first is, that the libellant did not bring the brig back to St. Michael, when driven to sea from that island. The facts, upon which this cause of forfeiture depends, have been already considered in the case, upon the bottomry bond, [Id.] and the conduct of the libellant found not open to serious objection.

The second ground relied on by the claimant is, that when the brig was driven to sea, there was on board, in a trunk belonging to the master, specie "to the amount of $1,000, or near that sum;" that the libellant broke open the trunk, took the money into his own possession, and has not accounted for it. That such a trunk was on board, containing some specie, which the libellant took possession of, is admitted. The evidence concerning his having broken the trunk to obtain it is conflicting, and the fact, standing by itself, does not seem to me material. Because, in the actual circumstances in which the libellant was placed, he had a right to take and use this specie. He had become the temporary master of the brig, which needed repairs. This money was on board, and belonged to the owner of the vessel. It was the duty of the libellant to use it in payment for the repairs. If, as the claimant asserts, the trunk was locked, and Captain Pratt had the key, the libellant might properly force the lock. If, as the libellant alleges, the key was left in the lock, he could have no motive to use force upon it, and it would be difficult to believe he did so. I do not pause to determine this question of fact, for the reasons above indicated, which are in accordance with the ground assumed in the answer. That alleges it to

have been the duty of the libellant to apply the specie to make payment for the repairs; and if this be so, the particular mode in which the libellant got it out of the trunk is unimportant, unless it be connected with some other circumstance tending to prove fraud.

In the account of the disbursements for the repairs of the brig at St. Thomas, the sum of $307.10 is credited to the vessel, as so much cash received from the libellant; who admits that he retained, for his own use, fifty dollars, and says he paid the sum of $192.90 "to the crew, and to disburse the vessel," and that this accounts for the whole of the specie which was on board, amounting to the sum of five hundred and fifty dollars only, and not the sum of one thousand dollars, as is alleged in the answer. Considering that the accounts of Carrington & Co., who were the consignees of the vessel, show large disbursements for the vessel, including payments to and for the seamen, I confess this account by the libellant of these funds, is not entirely satisfactory to my mind. But the claimant has offered no other legal evidence of the amount of the specie on board, or of its disbursement or retention by the libellant. The answer simply declares that there was on board, in specie, the sum of $1,000, or about that sum, and that the libellant has not accounted for it. Unless the deposition of the libellant, taken in the suit on the bottomry bond, is invoked into this case, I find no evidence whatever to show the amount of specie on board; because this suit being against the master, as well as the brig, his deposition is not evidence. And if the libellant's deposition is to be considered as put in evidence, the whole of it must be read, and taken to be true, unless shown by satisfactory evidence to be false. Though clouded by some grave suspicions, I cannot say that the case affords sufficient grounds upon which to rest a charge of fraudulent misappropriation of money left on board, contrary to the sworn statements of the libellant in his deposition; and, therefore, I do not find this ground of forfeiture to be made out, in point of fact.

It remains to consider the last alleged cause of forfeiture, which is the same investigated in the suit on the bottomry bond. It appears that the libellant, while acting as temporary master at St. Thomas, in concert with the bottomry holder, gave a bottomry bond on the brig for a larger sum than was actually advanced, for the purpose of defrauding the underwriters on the vessel. The question is, whether this misconduct forfeits the wages claimed in this suit.

Forfeiture of the wages of seamen, though in some cases regulated by positive law, rests upon violation of contract, the performance of which is enforced by the marine law by means of this species of punishment. Consequently, before such a forfeiture can

be adjudged, it must appear that the contract, under which the wages are claimed, has been violated. It is not enough that some other contract, between the same parties, has been broken, however gross the wrong may be. Now, this is a libel in rem by the mate, to recover the wages due to him in that capacity. The claim for wages, as temporary master, can not be enforced against the vessel. It is no part of the subject-matter of this libel, which does not allege it, but confines the demand to the wages due to the libellant as mate, pursuant to his written contract in the shipping articles. The libel lays no foundation for any inquiry into an implied contract, arising out of the emergency of a temporary command, either for the purpose of awarding or withholding compensation, for services rendered in that command. That is a subject, the merits of which can be investigated only in a suit founded on that contract. If it is found to have existed, and to have been so violated as to come within the principles upon which the marine law inflicts a forfeiture, and the pleadings lay the necessary foundation for such an adjudication, a forfeiture of rights, under the implied contract, for a gross breach of its duties, would follow. But in a suit founded on a very different contract, to recover compensation for services which are unconnected with the duties alleged to have been neglected, I cannot see how a forfeiture can be inflicted. Such is this case; for in his capacity of mate, it is not alleged the libellant was guilty of any neglect of duty. The charge is, that after he had succeeded to the command, and in the course of exercising it, he failed in the honest performance of its obligations. This charge does not seem to me to meet the claim, and, therefore, without prejudice to any rights of the claimant in any suit arising out of the implied contract, I am of opinion it must be dismissed. I think it proper to add, however, that if it had appeared that the misconduct of the libellant had occasioned damage to the claimant, I should have thought it proper to suspend the decree until he could have an opportunity to bring a suit for its recovery, to the end that a set-off might be made; and also, that, as the libellant admits he appropriated to his own use the sum of fifty dollars, he must be taken to have done this in the only way in which it was honest for him to do it, and that was as part payment of his wages; and so, this amount must be deducted from the amount of his wages. I do not think he can qualify his own wrong, in taking this money from the funds of the vessel, and sending it home, by alleging he did it in his capacity of temporary master, and so will account in that capacity, and not as mate. He had no right to take it in the capacity of master or mate; and I consider it my duty to treat it as part payment of his wages; the only debt, so far as now appears to the court, due to him from the vessel or the owner.

As this deduction does not appear to have been made in the district court, its decree must be altered in this particular; in all other respects, it is affirmed. I allow no costs on the appeal to either party.